ORAL ARGUMENT NOT YET SCHEDULED

BRIEF FOR APPELLEE
_____

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

No. 22-3087
_____

UNITED STATES OF AMERICA,                    Appellee,

   v.

TROY ANTHONY SMOCKS,                    Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
_____

MATTHEW M. GRAVES
United States Attorney

CHRISELLEN R. KOLB
ELIZABETH H. DANELLO
* MARY C. FLEMING
D.C. Bar # 1048019
Assistant United States Attorneys
* Counsel for Oral Argument
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Mary.Fleming@usdoj.gov
(202) 252-6829

Cr. No. 21-198 (TSC)

# CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), appellee hereby states as follows:

## Parties and Amici

All parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief for Appellant.

## Rulings Under Review

This is an appeal from an order entered on November 7, 2022, by the Honorable Tanya S. Chutkan clarifying the language of one of appellant Troy Smocks's conditions of release (Appendix for Appellant at 196-97 (written order); *id*. at 215-21 (oral ruling)).

## Related Cases

Appellee is aware of four related cases:

1. *Smocks v. United States*, No. 22-cv-3534 (D.D.C.) (Chutkan, J.) (petition for writ of prohibition regarding supervised release conditions, transferred from the U.S. District Court for the Eastern District of Texas) (case dismissed on April 3, 2023).

2. *Smocks v. U.S. District Court for the District of Columbia*, No. 22-cv-3681 (D.D.C.) (Chutkan, J.) (petition for writ of habeas corpus, transferred from the U.S. District Court for the Eastern District of Texas) (case dismissed on January 11, 2023).

3. *In re Troy Anthony Smocks*, No. 22-40635 (5th Cir.) (petition for writ of mandamus directed to district judge presiding over petition for writ of habeas corpus filed in the U.S. District Court for the Eastern District of Texas) (petition denied on September 27, 2022).

4. *Smocks v. United States*, No. 23-10746 (5th Cir.) (appeal from dismissal of petition for writ of habeas corpus filed in the U.S. District Court for the Northern District of Texas) (case pending).

## STATUTES AND REGULATIONS

Pursuant to D.C. Circuit Rule 28(a)(5), appellee states that all pertinent statutes and regulations are contained in the Addendum to the Brief for Appellant.

# TABLE OF CONTENTS

INTRODUCTION ....................................................................... 1

COUNTERSTATEMENT OF THE CASE ........................................... 3

    Smocks's Offense Conduct ................................................. 3

    Plea and Sentencing ......................................................... 5

    Later Clarification of Supervised Release Conditions ...................... 9

SUMMARY OF ARGUMENT ..................................................... 14

ARGUMENT ......................................................................... 16

    I.   This Court Should Dismiss This Appeal, Which Falls Within the Scope of Smocks's Knowing and Voluntary Appeal Waiver. ........................................................ 16

        A.  General Legal Principles and Standard of Review ............ 16

        B.  Discussion ........................................................ 17

    II.  The District Court Did Not Plainly Err or Abuse its Discretion in Ordering Computer Monitoring and Installation of Software to Effectuate that Monitoring. ........... 21

        A.  General Legal Principles and Standard of Review ............ 21

        B.  The District Court Did Not Plainly Err in Ordering Computer Monitoring. ...................................... 23

        C.  The District Court Did Not Plainly Err or Abuse Its Discretion in Clarifying that the Condition of Computer Monitoring Required Installation of Monitoring Software. ........................................ 31

CONCLUSION ..................................................................... 38

# TABLE OF AUTHORITIES*

*Eberhart v. United States*, 546 U.S. 12 (2005)........................................21

*In re Sealed Case*, 573 F.3d 844 (D.C. Cir. 2009) ...................................26

*In re Sealed Case*, 702 F.3d 59 (D.C. Cir. 2012) ....................................17

*United States v. Accardi*, 669 F.3d 340 (D.C. Cir. 2012) .................27, 35

*United States v. Albertson*, 645 F.3d 191 (3d Cir. 2011) ........................29

*United States v. Damon*, 933 F.3d 269 (3d Cir. 2019) ............................20

\* *United States v. Guillen*, 561 F.3d 527 (D.C. Cir. 2009) .................17, 21

*United States v. Hayes*, 283 Fed. App'x 589 (9th Cir. 2008)..................25

*United States v. Hull*, 893 F.3d 1221 (10th Cir. 2018) ...........................20

*United States v. Hunt*, 843 F.3d 1022 (D.C. Cir. 2016) ........................22

*United States v. Jackson*, 26 F.4th 994 (D.C. Cir. 2022).......................18

*United States v. Kuntz*, 68 F.4th 748 (2d Cir. 2023)...............................28

\* *United States v. Lee*, 888 F.3d 503 (D.C. Cir. 2018) .........................17, 21

\* *United States v. Legg*, 713 F.3d 1129 (D.C. Cir. 2013)..............23, 25, 36

*United States v. Lifshitz*, 369 F.3d 173 (2d Cir. 2004) ...........................29

*United States v. Lonjose*, 663 F.3d 1292 (10th Cir. 2011) ......................19

---

\* Authorities upon which we chiefly rely are marked with asterisks.

\* *United States v. Love*, 593 F.3d 1 (D.C. Cir. 2010) .............. 20, 25, 27, 35

*United States v. Malenya*, 736 F.3d 554 (D.C. Cir. 2013) ...................... 37

*United States v. Nash*, 438 F.3d 1302 (11th Cir. 2006) ........................ 26

*United States v. Paul*, 274 F.3d 155 (5th Cir. 2001) ............................. 36

*United States v. Quinzon*, 643 F.3d 1266 (9th Cir. 2011) ..................... 28

*United States v. Russell*, 45 F.4th 436 (D.C. Cir. 2022) ......................... 22

*United States v. Russell*, 600 F.3d 631 (D.C. Cir. 2010) .................. 27, 37

*United States v. Sullivan*, 451 F.3d 884 (D.C. Cir. 2006) ..... 22, 23, 30, 36

*United States v. Voelker*, 489 F.3d 139 (3d Cir. 2007) ........................... 28

*United States v. Wilson*, 707 F.3d 412 (3d Cir. 2013) ........................... 19

## Other Authorities

18 U.S.C. § 875(c) ..................................................................... 5

18 U.S.C. § 1030(c)(1) .............................................................. 9

18 U.S.C. § 1030(e)(1) ......................................................... 9, 10

18 U.S.C. § 3553(a)(1) ............................................................ 22

18 U.S.C. § 3553(a)(2)(B) ....................................................... 22

18 U.S.C. § 3553(a)(2)(C) ....................................................... 22

18 U.S.C. § 3553(a)(2)(D) ....................................................... 22

18 U.S.C. § 3553(a)(4) ............................................................ 22

18 U.S.C. § 3553(a)(7)............................................................22

18 U.S.C. § 3583(d) ..................................................22, 24, 32

18 U.S.C. § 3583(d)(2)............................................................22

18 U.S.C. § 3583(d)(3)............................................................22

18 U.S.C. § 3583(e)(2)............................................................22

18 U.S.C. § 3742 .......................................................................6

Fed. R. App. P. 4(b)(1)(A)(i)..................................................21

Chapter 3: Computer and Internet Restrictions (Probation and Supervised Release Conditions, United States Courts (last accessed Nov. 21, 2023) .................................................................25-25

# ISSUES PRESENTED

I.     Whether this Court should dismiss this appeal, which challenges certain conditions of appellant Troy Smocks's supervised release, where, as part of his plea agreement, Smocks agreed to waive his right to appeal any term or condition of supervised release and Smocks has shown no reason that he should not be held to his appeal waiver.

II.     If the Court nonetheless entertains this appeal, whether the district court plainly erred or abused its discretion in ordering, as a condition of supervised release following his conviction for making online threats, that Smocks submit to computer monitoring and later clarifying that Smocks would be required to allow the Probation Office to install software to effectuate this monitoring, where: (A) to the extent Smocks challenges the original condition of computer monitoring, he failed to preserve such a challenge and cannot show plain error affecting substantial rights; and (B) some of Smocks's complaints about the monitoring-installation requirement similarly are unpreserved, and all lack merit.

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

No. 22-3087

_____

UNITED STATES OF AMERICA,                    Appellee,

v.

TROY ANTHONY SMOCKS,                         Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

BRIEF FOR APPELLEE

_____

## INTRODUCTION

On January 6, 2021, through posts made on his social media account, appellant Troy Anthony Smocks threatened to injure law enforcement officers, politicians, and technology company executives (Appendix for Appellant (A) 25-27). The threats were tied to the events of January 6—the day on which a mob overran the United States Capitol, assaulted numerous police officers, threatened politicians, and delayed Congress's certification of the electoral college vote count (A23-25).

Smocks pleaded guilty to one count of transmitting threats in interstate commerce (A134-35). As part of his plea agreement, Smocks agreed to waive his right to appeal his sentence, including any term or condition of supervised release (A18). The Honorable Tanya S. Chutkan sentenced Smocks to 14 months of incarceration, followed by 36 months of supervised release (A189; see also A56-62). At the initial sentencing, the court imposed a supervised release condition of computer monitoring and search, to which Smocks did not object (A190-91; A60). At a later hearing, the court clarified that condition to make explicit that Smocks must allow the United States Probation Office to install monitoring software on any computer he uses (A221; A196). Smocks objected to the additional language on installation of monitoring software and now appeals from the order adding that language.

This appeal is foreclosed by the appeal waiver that Smocks agreed to as part of his plea agreement. Even on the merits, Smocks's challenges fail. He did not preserve several of the arguments he now raises, and he cannot show error under any standard of review. In ordering computer monitoring and the installation of monitoring software, the district court appropriately determined that the need for deterrence and public safety

outweighed Smocks's liberty interests. The court was not required to articulate the exact terms of either the computer monitoring or the monitoring software to be installed. The installation condition also is not inconsistent with the other two computer-related conditions of release. Rather, the three conditions are complementary. This appeal should be dismissed, or in the alternative, the district court's judgment should be affirmed.

## COUNTERSTATEMENT OF THE CASE

### Smocks's Offense Conduct

On January 5, 2021—the day before a joint session of Congress was scheduled to certify the 2020 electoral college vote count—Smocks traveled from Texas to the Washington, D.C., area (A25). On January 6, Smocks sent two threatening messages on a social media service that reached tens of thousands of viewers (A25-26). Smocks's social media account falsely identified Smocks as a retired military officer (A25).

Smocks sent the first message on the morning of January 6 (A25). That message threatened to injure law enforcement officers, and included the following language:

Today, January 6, 2021, we Patriots by the millions, have arrived in Washington, D.C., carrying banners of support for the greatest President the world has ever known.

Bit [sic] if we must . . .

Many of us will return on January 19, 2021, carrying Our weapons, in support of Our nation's resolve, towhich [sic] the world will never forget!!!

We will come in numbers that no standing army or police agency can match. However, the police are NOT Our enemy, unless they choose to be!

All who will not stand with the American Patriots . . . or who cannot stand with Us . . . then, that would be a good time for YOU to take a few vacation days.

The American Patriot. (A25-26.)

Later that afternoon, a large crowd gathered outside the Capitol and individuals illegally forced their way into the building (A24-25). A riot ensued that resulted in temporary suspension of the congressional proceedings, which did not resume until later that evening (*id.*).

Smocks sent his second threatening message on the evening of January 6, after the Capitol had been secured from the earlier rioting (A26). That message threatened to injure politicians and technology company executives, and included the following language:

Today Eric Trump said that he would physically fight with the Patriots to save Our country. Today Representative Mo

Brooks asked the Patriots to pledge Our live [sic] and wealth to fight for Our country. And today President Trump told of [sic] to "fight like hell". He said that Our cause was a matter of national security, and that these people behind the massive fraud must be arrested and brought to justice. And that task, falls on the shoulders of We The People . . . the American Patriots.

So over the next 24 hours, I would say, lets get our personal affairs in order. Prepare Our Weapons, and then go hunting. Lets hunt these cowards down like the Traitors that each of them are. This includes, RINOS, Dems, and Tech Execs. We now have the green light. [All] who resist Us, are enemies of Our Constitution, and must be treated as such.

Today, the cowards ran as We took the Capital. They have it back now, only because We left. It wasn't the building that We wanted . . . it was them! (A26-27.)

Smocks admitted that he sent these messages for the purpose of issuing threats, knowing that his messages would be perceived as threats (A27).

## Plea and Sentencing

Smocks was indicted on two counts of transmitting threats in interstate commerce, in violation of 18 U.S.C. § 875(c) (A10-11). The message Smocks sent on the morning of January 6 formed the basis for Count One, and the message sent in the evening of January 6 formed the basis for Count Two (*id.*).

Smocks pleaded guilty to Count One pursuant to a written plea agreement (A12-22, 134-35). In return, the government agreed to move to dismiss Count Two at sentencing and not to prosecute any other charges based on the conduct described in the statement of offense (A13). The plea agreement also contained an appeal waiver:

> Your client agrees to waive, insofar as such waiver is permitted by law, the right to appeal the conviction in this case on any basis, including but not limited to claim(s) that (1) the statute(s) to which your client is pleading guilty is unconstitutional, and (2) the admitted conduct does not fall within the scope of the statute(s). Your client understands that federal law, specifically 18 U.S.C. § 3742, affords defendants the right to appeal their sentences in certain circumstances. Your client also agrees to waive the right to appeal the sentence in this case, including but not limited to any term of imprisonment, fine, forfeiture, award of restitution, term or condition of supervised release, authority of the Court to set conditions of release, and the manner in which the sentence was determined, except to the extent the Court sentences your client above the statutory maximum or guidelines range determined by the Court. In agreeing to this waiver, your client is aware that your client's sentence has yet to be determined by the Court. Realizing the uncertainty in estimating what sentence the Court ultimately will impose, your client knowingly and willingly waives your client's right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the Government in this Agreement. Notwithstanding the above agreement to waive the right to appeal the conviction and sentence, your client retains the right to appeal on the basis of ineffective assistance of counsel, but not to raise on appeal other issues regarding the conviction or sentence. (A17-18.)

Smocks signed the plea agreement on September 13, 2021, affirming that he had "read every page of this Agreement," "discussed it with [his] attorney," "fully underst[ood]" the agreement, and "agree[d] to it without reservation . . . voluntarily and of [his] own free will, intending to be legally bound" (A22).

The district court conducted a plea colloquy. The court determined that Smocks was competent to enter a plea and was doing so knowingly and voluntarily (A116). The court verified that Smocks had the opportunity to review the plea agreement with his lawyer and was satisfied with his legal representation (A115). The Court also reviewed with Smocks the plea agreement's terms, including the appeal waiver (A118-20, 125-28). Smocks confirmed that by pleading guilty, he was "giving up the right to appeal the sentence" (A118), including any term of supervised release, subject to certain exceptions not applicable here (A118-20, 128-29). The court confirmed that Smocks understood the sentencing consequences of his plea (A128-33). Based upon the inquiry, the court accepted Smocks's guilty plea (A135).

More than three weeks before the change-of-plea hearing, the Probation Office disseminated a draft presentence investigation report

stating that the district court might impose "computer monitoring/search" as a condition of supervised release "based on the defendant's acts in the instant case" of transmitting threats "to injure the person of another" (Supplemental Appendix (SuppA) 27; see also SuppA58 (final presentence investigation report)). In its sentencing recommendation issued weeks before sentencing, the Probation Office "recommended that the Court impose computer monitoring and/or search, based on the defendant's acts in the instant case" (SuppA68). In addition, the final presentence investigation report detailed Smocks's numerous prior criminal convictions (and multiple revocations of supervised release or probation), spanning from the early 1980s through 2005 (SuppA38-53). Several of those offenses involved false identification documents, and Smocks used computer equipment to facilitate at least one of those offenses (SuppA50-51). Smocks did not object before sentencing to the proposed computer monitoring and search, or to the account of his criminal history (see A46-55; SuppA63-65).

On October 21, 2021, the district court sentenced Smocks to 14 months of incarceration, to be followed by 36 months of supervised

release (A189; see also A56-62). As to the supervised release, the court

imposed a special condition of computer monitoring:

> Computer monitoring and search. To ensure compliance with the computer monitoring condition, you must allow the probation officer to conduct initial and periodic unannounced searches of any computers as defined in 18 U.S.C. § 1030(c)(1) subject to computer monitoring.
>
> These searches shall be conducted to determine whether the computer contains any prohibited data prior to installation of the monitoring software, whether the monitoring software is functioning effectively after its installation, and whether there have been attempts to circumvent the monitoring software after its installation. You must warn any other people who use these computers that the computers may be subject to searches pursuant to this condition. (A190-91; see also A60).[1]

Smocks did not object to this condition of supervised release.

## Later Clarification of Supervised Release Conditions

In January 2022, Smocks began his term of supervised release in

the Eastern District of Texas (A82). Thereafter, the Probation Office

requested that Smocks agree to modify his release conditions, to allow

---

[1] The sentencing transcript's reference to 18 U.S.C. § 1030(c)(1) is a mistake; the correct citation is to subsection (e)(1). The court's written judgment correctly defines "computer" by reference to subsection (e)(1) (A60). Section 1030(e)(1) broadly defines "computer," and references herein to "computers" are intended to be coterminous with that definition.

the Probation Office to install computer monitoring software on "any computer . . . you use" (A80). Smocks declined (A84). Thus, in September 2022, the Probation Office petitioned the district court to add two conditions to Smocks's conditions of supervised release:

1. You must allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) you use.

2. Computer Search - You must submit your computers (as defined in 18 U.S.C. § 1030(e)(1)) or other electronic communications or data storage devices or media, to a search. You must warn any other people who use these computers or devices capable of accessing the Internet that the devices may be subject to searches pursuant to this condition. A probation officer may conduct a search pursuant to this condition only when reasonable suspicion exists that there is a violation of a condition of supervision and that the computer or device contains evidence of this violation. Any search will be conducted at a reasonable time and in a reasonable manner. (A82-83.)

In its petition, the Probation Office explained that the court previously "imposed the special condition of computer monitoring/search with the intent for the United States Probation Office (USPO) to monitor and search computer devices" (A83). However, the special condition "does not allow the USPO to install computer monitoring software on a computer device or conduct reasonable suspicion searches on computer devices the person under supervision does not report to the USPO" (*id.*).

Thus, the requested modifications would allow Smocks to access "computers and internet-connected devices . . . while monitoring and potentially deterring future violations of supervision" (*id.*).

The United States Attorney's Office did not oppose, other than to note that any modification was unnecessary because the existing release conditions already required the installation of computer-monitoring software (A102-03).

Smocks opposed on several grounds. He argued that the district court lacked jurisdiction because it had transferred his supervision to the Eastern District of Texas and because Smocks had petitioned for a writ of habeas corpus in that district (A90-93). Further, he argued that any monitoring of his electronic communications would his violate his right to free speech under Texas statutory law and the First Amendment to the United States and Texas Constitutions (A93-95). He claimed the installation condition was not reasonably related to his offense, would violate his inherent right to privacy, and would unreasonably infringe on his work as a legal assistant (A89-90, 93-96). Smocks also argued that the district court should defer to Texas courts because the matter "involves interpretation of Texas law" and because Smocks had

petitioned a Texas court for a writ of prohibition in Texas barring the modification of his conditions (A91-92).[2] Smocks did not suggest that the language either in the existing Judgment and Commitment Order or in the conditions proposed by the Probation Office was vague or contradictory.

At the November 2, 2022, hearing on the requested conditions, the court noted that "formal modification to allow the installation of computer monitoring software may not even be necessary here, because the original conditions I imposed strongly implied that such software would be installed" (A219). The court further explained that "[t]he same is true in large part of the second proposed modification," given that "[t]he computer monitoring and search condition already imposed on Mr. Smocks provided that he must allow the probation officer to . . . conduct initial and periodic unannounced searches of any computers subject to computer monitoring, and that Mr. Smocks must warn any . . . other people who use his computers about the possibility of such searches"

---

[2] Smocks's petition for a writ of prohibition was transferred to the U.S. District Court for the District of Columbia, No. 22-cv-3534 (Chutkan, J.), where it was ultimately dismissed for failure to prosecute and was denied as moot.

(A220). Thus, the second modification "merely clarifies that the probation officer may reasonably search any of Mr. Smocks's devices, even if not reported to the probation office, if there is a reasonable suspicion warranting that search" (*id.*; see also A211 (characterizing the proposed modifications as "a clarification" of original conditions imposed)).

The district court overruled Smocks's objections and added the requested language (A221; see also A196 (written order, entered November 7, 2022)). The district court connected the monitoring-installation condition to "the nature of Mr. Smocks's underlying offense, and his long history of criminal activity involving electronic devices" (A217). The court reasoned that the installation of monitoring software was necessary "for purposes of deterrence and public safety" (*id.*). Further, the court noted that computer monitoring and search were "the least intrusive means of achieving these goals" because "[b]oth conditions are wholly content-neutral" and "prohibit no speech at all other than criminal speech, much less, as in the cases cited by Mr. Smocks, ban him from internet or computers entirely" (*id.*). The court also addressed Smocks's concern that the conditions would expose attorney work product generated by his work as a legal assistant. The court explained that

concern "is mitigated by his warning those third parties that his devices may be subject to monitoring and searches" (A218-19). Further, "[a]ny remaining inconvenience or risk is outweighed . . . by the public interest in deterrence and safety," especially given that "the underlying offenses in this case were threats carried out on electronic devices" (A219).

Smocks noted a timely appeal on November 7, 2022 (A198).

## SUMMARY OF ARGUMENT

This Court should dismiss this appeal. As part of his plea agreement, Smocks agreed to waive his right to appeal his sentence, including any conditions of supervised release. Although some courts have held that an appeal waiver does not encompass a subsequent modification to the terms of supervised release, the November 2022 revision merely clarified and effectuated an existing release condition. Smocks fails to show why the appeal waiver should not be enforced here.

Smocks's claims also fail on the merits. To the extent Smocks claims the district court abused its discretion in ordering computer monitoring as a condition of supervised release, he has not preserved that claim. The district court imposed that condition at the October 21, 2021, sentencing hearing. Smocks did not object to computer monitoring, and any

challenge now to that condition may be reviewed only for plain error affecting substantial rights. Smocks cannot meet that stringent standard or even show an abuse of discretion by the district court. Smocks used a computer to commit the present offense of threats and to facilitate other crimes. Computer monitoring thus promoted the sentencing goals of deterrence and public safety, and it involved no greater deprivation of liberty than reasonably necessary to accomplish those goals.

Smocks also shows no basis to overturn the district court's 2022 modification of the 2021 sentencing order to make clear that Smocks was required to allow the Probation Office to install monitoring software on his computers. Smocks did not object to the installation of monitoring software at the initial sentencing, when that condition was implicitly imposed. In any event, even at the time of modification, Smocks failed to raise some of the objections he raises now. He did not argue in the district court that the language of the installation condition was vague and afforded too much discretion to the Probation Office, nor did he complain that the conditions were internally inconsistent. As to both assertions, he cannot show plain error or error at all. Courts often afford the Probation Office discretion in implementing supervised release conditions,

particularly as to conditions that pertain to ever-changing computer and Internet use. Further, the condition requiring installation of computer-monitoring software is consistent with Smocks's other computer-related conditions of release.

Finally, Smocks shows no abuse of discretion in the substance of the software-installation order. The only specific liberty interest that Smocks raised was a concern about attorney work product and his work as a legal assistant. But the record reveals that his work as a legal assistant is akin to a hobby—not his livelihood. Thus, the district court did not abuse its discretion in ordering installation of computer-monitoring software notwithstanding Smocks's claimed interest in his legal-assistant work.

## ARGUMENT

## I. This Court Should Dismiss This Appeal, Which Falls Within the Scope of Smocks's Knowing and Voluntary Appeal Waiver.

### A. General Legal Principles and Standard of Review

A "waiver of the right to appeal a sentence is presumptively valid and is enforceable if the defendant's decision to waive is knowing,

intelligent, and voluntary." *United States v. Lee*, 888 F.3d 503, 506 (D.C. Cir. 2018) (quoting *In re Sealed Case*, 702 F.3d 59, 63 (D.C. Cir. 2012)). "An anticipatory waiver—that is, one made before the defendant knows what the sentence will be—is nonetheless a knowing waiver if the defendant is aware of and understands the risks involved in his decision." *United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009). The validity of an appeal waiver is reviewed de novo, *id.* at 531, but a defendant's knowing, anticipatory waiver of his right to appeal his sentence is "presumptively valid," *id.* at 529.

## B.  Discussion

This Court should dismiss this appeal because Smocks waived his right to appeal his conditions of supervised release. As part of his plea agreement, Smocks agreed "to waive the right to appeal the sentence in this case, including but not limited to any . . . term or condition of supervised release, authority of the Court to set conditions of release, and the manner in which the sentence was determined" (A18). Nothing in Smocks's brief or the record on appeal suggests that he did not knowingly, intelligently, and voluntarily agree to the terms of his plea agreement, including the appeal waiver. At the plea hearing, Smocks confirmed that

he was "giving up the right to appeal the sentence," including any term of supervised release, subject to certain exceptions not applicable here (A118-20). Unequivocally, Smocks knew that he was waiving his ability to appeal his sentence, including any term or condition of supervised release.

Smocks's claims on appeal fall within the scope of the waiver. Even if Smocks is appealing only the order modifying the conditions of supervised release to add more language about software installation, but see infra pp. 23-24, the appeal waiver still bars that challenge. The language of the waiver provision is clear: Smocks may not "appeal the sentence in this case, including but not limited to *any* . . . term or condition of supervised release" (A18 (emphasis added)). This broad language encompasses release conditions imposed in the original sentence, as well as conditions imposed through a modification order. *See United States v. Jackson*, 26 F.4th 994, 1000 (D.C. Cir. 2022) (recognizing the breadth of the phrase "including but not limited to" as used in an appeal waiver).

We recognize that some other federal courts of appeals have declined to enforce appeal waivers where the defendant challenges the

modification of supervised release conditions after the original sentencing. *See United States v. Wilson*, 707 F.3d 412, 415-16 (3d Cir. 2013); *United States v. Lonjose*, 663 F.3d 1292, 1301-02 (10th Cir. 2011). Those courts reasoned the defendant would "reasonably understand" that he or she is waiving only the "distinct right to appeal" that arises "when the judgment of conviction is filed and expires after 14 days." *Lonjose*, 663 F.3d at 1299*; see also Wilson*, 707 F.3d at 415-16.

Even assuming this Court agreed with that general principle, the appeal waiver here nonetheless should apply. The foregoing cases involved a new condition of release not contemplated at sentencing. Here, in contrast, the added language on the software-installation condition did not add anything new. It simply clarified what was already in the existing sentencing order. That order required "[c]omputer monitoring and search" and referred three times to "monitoring software" and its "installation" (A190-91 (computer searches shall be conducted "prior to installation of the monitoring software," "after its installation" to ensure "the monitoring software is functioning effectively," and "after its installation" to determine "whether there have been attempts to circumvent the monitoring software"). From this language and context,

it is obvious that the installation of monitoring software was required. Indeed, it is hard to conceive how the ordered computer monitoring could be accomplished without the installation of some kind of monitoring software. *See United States v. Hull*, 893 F.3d 1221, 1224 (10th Cir. 2018) (supervised release conditions are interpreted under a "common sense, non-technical reading" (citation omitted)); *cf. United States v. Love*, 593 F.3d 1, 10 (D.C. Cir. 2010) (this Court "look[s] to the context of the district court's statements" in determining the meaning of supervised release conditions). Thus, as the district court correctly found, the installation of monitoring software "was implicit in the conditions already imposed" (A220). Smocks should not be able to evade the appeal waiver for which the government bargained by characterizing the November 2022 order as imposing some unexpected new condition. *See United States v. Damon*, 933 F.3d 269, 275 (3d Cir. 2019) (enforcing waiver of any appeal that "challenges the sentence imposed"; defendant "cannot now challenge the term of his supervised release by reframing it as a post-sentence modification").

Because Smocks's arguments fall within his unambiguous appeal waiver, this Court should decline to address them and should dismiss the

appeal. *See Lee*, 888 F.3d at 509 (enforcing appeal waiver and dismissing appeal challenging conditions of supervised release); *Guillen*, 561 F.3d at 532 (same where defendant generally challenged sentence).[3]

## II. The District Court Did Not Plainly Err or Abuse its Discretion in Ordering Computer Monitoring and Installation of Software to Effectuate that Monitoring.

Even if the Court entertains this appeal, Smocks shows no basis for reversal. Smocks did not preserve any objection to computer monitoring at the time of sentencing, and he fails to show plain error affecting substantial rights. As for his claims about the installation requirement, several of his arguments are also unpreserved, and all lack merit.

### A. General Legal Principles and Standard of Review

A district court may impose any condition of supervised release it considers to be appropriate, subject to three requirements. 18 U.S.C.

---

[3] To the extent Smocks is appealing the original order of computer monitoring, his appeal would be not only barred by the appeal waiver but untimely, as his notice of appeal was filed well beyond the 14-day period for noting an appeal from his sentence. *See* Fed. R. App. P. 4(b)(1)(A)(i). The government does not press the time bar in this case, however, and, if the Court does not agree with our waiver argument, it should proceed to the merits. *See Eberhart v. United States*, 546 U.S. 12, 19 (2005).

§ 3583(d). First, the condition must be "reasonably related" to the nature and circumstances of the offense, the defendant's history and characteristics, the need to deter crime and protect the public, and the defendant's correctional needs. *Id.*; *see also United States v. Russell*, 45 F.4th 436, 439 (D.C. Cir. 2022). Second, the condition must "involve[ ] no greater deprivation of liberty than is reasonably necessary" to achieve deterrence, protection of the public, and correctional needs. 18 U.S.C. § 3583(d)(2). Third, the condition must be consistent with any pertinent policy statements issued by the Sentencing Commission. *Id.* § 3583(d)(3). The court "may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release," after "considering the factors set forth in [Title 18] section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), [and] (a)(4) [to] . . . (a)(7)." 18 U.S.C. § 3583(e)(2).

Sentencing judges are "in the best position to 'measure[ ] the conditions imposed against the statutorily enumerated sentencing goals.'" *United States v. Hunt*, 843 F.3d 1022, 1030 (D.C. Cir. 2016) (quoting *United States v. Sullivan*, 451 F.3d 884, 895 (D.C. Cir. 2006)). Thus, sentencing judges have "wide discretion" in imposing conditions of

supervised release, and this Court reviews those conditions "only for abuse of that discretion." *United States v. Legg*, 713 F.3d 1129, 1131 (D.C. Cir. 2013). "Moreover, when a defendant fails to make a timely objection before the district court and instead raises his argument for the first time on appeal," this Court reviews "only for plain error." *Id.* at 1132. To prevail on plain error review, the appellant must show that the district court "committed (1) a legal error that was (2) 'plain' (a term that is synonymous with 'clear' or 'obvious'), and that (3) affected [his] substantial rights." *Sullivan*, 451 F.3d at 892. "If all three conditions are met," then this Court "retain[s] discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 892-93.

## B. The District Court Did Not Plainly Err in Ordering Computer Monitoring.

Despite framing the issue in this case as a challenge to the installation of monitoring software, Smocks appears to raise challenges to the basic supervised release condition of computer monitoring (see Brief for Appellant at 13 (original order did not identify what computers were covered or explain what "monitoring" meant), 16 (court failed to explain scope and mechanics of "monitoring"), 17-18 (court improperly

delegated to Probation Office the decisions regarding implementation of computer monitoring), 20 (monitoring condition "not least restrictive alternative as required by 18 U.S.C. § 3583(d)"). Smocks, however, failed to preserve any challenge to computer monitoring when that condition was imposed at the time of sentencing (see A192 (defense counsel indicating there were no objections after court imposed condition of computer monitoring)).[4] He cannot show plain error or even an abuse of discretion in the district court's order of computer monitoring.

Computer monitoring is "reasonably related" to the nature and circumstances of the offense, and to Smocks's history and characteristics, *see* 18 U.S.C. § 3583(d), because he used a computer in his underlying offense and to facilitate past crimes (A17). Further, as the court explained during the modification hearing, monitoring is needed to promote deterrence and public safety given the offense and Smocks's history (A217, 221). Also, the court specifically found that monitoring was "the

---

[4] Furthering his failure to object, Smocks filed a motion to correct the sentence 14 days after sentencing (Dist. Ct. Dkt. No. 64). In that motion, Smocks challenged the guidelines calculation, but did not challenge his conditions of release, including the computer-monitoring condition. The district court denied the motion to correct (Dist. Ct. Dkt. No. 69).

least intrusive means of achieving these [sentencing] goals," particularly compared to alternative conditions that would "ban [Smocks] from internet or computers entirely" (A217).

In these circumstances, the district court did not plainly err or err at all in ordering the monitoring of Smocks's computers. Indeed, this Court and others have upheld similar computer-monitoring conditions where the defendant used a computer in the underlying offense. *See Legg*, 713 F.3d at 1132 (district court did not plainly err in requiring monitoring, where the defendant used a computer in his offense); *Love*, 593 F.3d at 12 (upholding Internet ban, subject to exceptions allowed by the probation officer, where the defendant used the Internet to facilitate his offense); *United States v. Hayes*, 283 Fed. App'x 589, 594 (9th Cir. 2008) (upholding computer-related conditions of supervised release where the defendant used computers to make threats).

Smocks suggests (at 13, 16) that the original computer-monitoring condition was vague, but the district court used standard language recommended by the Probation Office (see A190-91; SuppA70).[5]

---

[5] See *Chapter 3: Computer and Internet Restrictions (Probation and Supervised Release Conditions*, United States Courts (last accessed Nov.
(continued . . . )

Furthermore, in clarifying the release conditions, the court explained the monitoring's target and its limits—that is, it "prohibit[s] no speech at all other than criminal speech" (A217). Smocks cites no case from this Court or the Supreme Court supporting his argument that the monitoring condition is too vague. Smocks thus fails to establish error, much less plain error, in the particular language of the computer-monitoring condition. *See In re Sealed Case*, 573 F.3d 844, 851 (D.C. Cir. 2009) ("Generally an error is plain if it contradicts existing circuit or Supreme Court precedent.").

Nor did the district court plainly err in delegating to the Probation Office the mechanics of implementing the monitoring condition (see Brief for Appellant at 17). Although courts must determine "*whether* a defendant must abide by a condition, . . . it is permissible to delegate to the probation officer the details" of how that condition will be satisfied. *United States v. Nash*, 438 F.3d 1302, 1305 (11th Cir. 2006) (per curiam) (citation omitted). Given the protean nature of computer and Internet

---

21, 2023), https://www.uscourts.gov/services-forms/computer-internet-restrictions-probation-supervised-release-conditions (providing sample language for computer-related conditions of release).

use, it is particularly "reasonable for the district court to give the Probation Office broad authority to determine the scope of . . . permissible Internet use" and "the new technologies the government may use to police its availability." *Love*, 593 F.3d at 12.

In *Love*, this Court acknowledged that the Internet ban ordered by the district court would "substantially affect [the defendant's] day-to-day activities," but it deemed the condition properly tailored in part because "we assume the Probation Office will reasonably exercise its discretion" in supervising and granting exceptions to the condition. *Id.* at 11-12. This Court recognized that rigid computer conditions that do *not* afford discretion to the Probation Office risk imposing a *greater* deprivation of rights than is reasonably necessary. *Id.*; *see also United States v. Russell*, 600 F.3d 631, 638 (D.C. Cir. 2010) ("A provision for modification by the probation department—a minimum change suitable on remand—would allow the restriction to adjust to ongoing developments in technology and to secure a reasonable balance between the statute's rehabilitative and deterrence goals."); *cf. United States v. Accardi*, 669 F.3d 340, 348 (D.C. Cir. 2012) (district court did not plainly err in allowing the Probation

Office to decide whether the defendant will be subjected to a residential or out-patient rehabilitation program).

Similarly, other federal courts of appeals have upheld supervised release conditions that rely on the Probation Office to select the precise technology for computer monitoring. *See United States v. Kuntz*, 68 F.4th 748, 772-73 (2d Cir. 2023) (explaining that the technological details of computer monitoring are the type of detail the Probation Office is permitted to oversee); *United States v. Quinzon*, 643 F.3d 1266, 1273 (9th Cir. 2011) ("The district court . . . was not required to, nor could it now, specify precisely what monitoring hardware or software, or other type of computer surveillance technology, should be used . . . .").

Neither of the two cases on which Smocks relies (at 16-18) establishes error in the delegation to the Probation Office of how to implement computer monitoring. *United States v. Voelker*, 489 F.3d 139 (3d Cir. 2007), is factually inapposite. In *Voelker*, the district court allowed the Probation Office to decide whether the defendant would "ever have unsupervised contact with any minor, including his own children, for the rest of his life*." Voelker*, 489 F.3d at 154. Given this severe—and potentially unconstitutional—interference with the defendant's own

children, the Third Circuit remanded for clarification of the condition. *Id.* at 154-55. In contrast, in the context of Internet restrictions, the Third Circuit allows the Probation Office to exercise the type of discretion that it rejected in *Voelker*. *See United States v. Albertson*, 645 F.3d 191, 197 (3d Cir. 2011).

Smocks also relies on the Second Circuit's decision in *United States v. Lifshitz*, 369 F.3d 173 (2d Cir. 2004), which considered a Fourth Amendment challenge to a computer-monitoring condition. The Second Circuit remanded for factual development of what kind of computer monitoring the condition authorized, but the condition in that was case less detailed than the monitoring condition here. *Lifshitz*, 369 F.3d at 192. Among other things, it was unclear in *Lifshitz* whether the monitoring required the installation of software or merely relied on records from the Internet service provider. *Id.*

In any event, these nonprecedential decisions are insufficient to establish plain error. Here, the computer-monitoring condition reflects the court's determination that monitoring was reasonably tailored to the statutory sentencing goals. Smocks shows no error, much less a plain one,

in the court's exercise of its broad discretion in setting conditions of supervised release.

Finally, even assuming the district court plainly erred, Smocks cannot satisfy his burden to show that a failure to correct the error would "seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings." *Sullivan*, 451 F.3d at 892-93.[6] Smocks used a computer to threaten police, politicians, and technology company executives, in connection with the January 6 riot—a harrowing attack on our democratic institutions. Moreover, this was not the first time Smocks had used a computer to facilitate a crime (SuppA50-51). Even assuming the court erred in imposing or articulating the computer-monitoring condition, Smocks does not satisfy the fourth prong of the plain error inquiry.

---

[6] If the trial court plainly erred in ordering computer monitoring, we do not dispute that such error affected the outcome of the sentence, and that Smocks could thus meet his burden under the third prong of plain error review.

### C. The District Court Did Not Plainly Err or Abuse Its Discretion in Clarifying that the Condition of Computer Monitoring Required Installation of Monitoring Software.

Smocks also shows no basis for reversal of the district court's 2022 order that requires installation of computer-monitoring software. To start, as we have noted, see supra pp. 19-20, the software-installation condition was already built into the monitoring condition that was imposed at the time of sentencing. Smocks, however, failed to raise any monitoring-related objection when he was sentenced, and he thus failed to preserve his current challenges to the installation of monitoring software.

Even if the court's 2022 order introduced the installation requirement, Smocks failed to preserve all but one of the arguments he now raises. Smocks argues that the condition of installation of computer software—like the original condition of computer monitoring—is too vague, and thus not narrowly tailored, and delegates too much discretion to the Probation Office (Brief for Appellant at 14, 17-18). Smocks also claims that the installation condition contradicts other release conditions and impermissibly infringes his attorney work product (*id.* at 12-15, 18-

19). Although Smocks claims (at 11) that these arguments were "fully preserved," he does not—and cannot—point to where he raised in the district court arguments of vagueness, improper delegation, and inconsistency among the conditions (Brief for Appellant at 11 (citing A93-96 (district court arguments based on free speech, privacy, lack of jurisdiction, attorney work product, and that the condition was not "reasonably related" to the offense)). The only argument that is not new on appeal is his claimed liberty interest in his work as a legal assistant and resulting attorney work product (see A67, 74-75, 90, 95).

Smocks fails to show plain error, or even an abuse of discretion, for his unpreserved claims. To start, his argument that the purported vagueness prevented the court from properly evaluating the installation requirement is not supported by the record. The court evaluated the installation condition in light of the statutory requirements. *See* 18 U.S.C. § 3583(d)-(e). As discussed, see supra pp. 24-26, the court weighed Smocks's liberty interest against the statutory sentencing goals and determined that the goals of deterrence and public safety justified the installation of monitoring software (A215-21). The court also explicitly found that the installation of monitoring software was less intrusive than

limiting Smocks's ability to use computers or the Internet. As discussed, see supra pp. 26-30, the court also did not plainly err in relying on the Probation Office's expertise to select and implement the computer-monitoring technology.

Further undercutting Smocks's vagueness and delegation claims is that the court required installation of monitoring software despite Smocks's arguments that the monitoring would be broad. Smocks argued that the software "will essentially monitor all of [his] internet communication," including "social media postings," "personal communications with individuals," and "all his political discussions and information dissemination" (A94). He claimed that "such monitoring" is "simply unnecessary, overbroad, and run[s] afoul of his First Amendment rights" (A94-95). The district court considered and rejected those arguments, explaining that computer monitoring, and the installation of software to effectuate that monitoring, was nonetheless the least intrusive means of achieving deterrence and public safety (A217). On appeal, Smocks does not argue that the district court somehow misapprehended the scope of the monitoring. Indeed, he appears to believe that a less-intrusive alternative would involve no monitoring

software at all (Brief for Appellant at 20 (suggesting as less-intrusive alternatives the monitoring of his public social media accounts, or requiring him to turn over his social media passwords)). The district court did not plainly err or abuse its discretion in recognizing that the installation of software was the only effective way to effectuate the computer-monitoring condition it found was necessary in this case.

Smocks's claim that the installation condition contradicts the two other computer-related conditions also fails. The three computer-related conditions target different things. First, a condition requires Smocks to allow the Probation Office to install monitoring software on any computer he uses (A196). Second, a condition orders "[c]omputer monitoring" and allows the Probation Office to search "any computers . . . subject to computer monitoring" to determine whether "the computer contains any prohibited data prior to installation of the monitoring software," and to ensure the monitoring software is functioning and not being circumvented after it is installed (A190-91; see also A60). Third, a condition allows the Probation Office to search Smocks's computers if there is reasonable suspicion that the computer contains evidence of a supervised release violation (A196). Thus, the first two provisions pertain

to the computer-monitoring software, as they allow the Probation Office to install the software and conduct searches to ensure it is working. The third provision separately allows the Probation Office to conduct reasonable-suspicion searches that do not depend on the computer-monitoring software.

Providing even more clarity are the statements made by the district court in modifying the conditions of release. *See Love*, 593 F.3d at 9 (the oral "pronouncement of the sentence constitutes the judgment of the court" (citation omitted)). In determining the meaning of supervised release conditions, this Court "look[s] to the context of the district court's statements." *See id.* at 10; *Accardi*, 669 F.3d at 347 (construing term of supervised release to "give effect to the intent of the district court"). Contrary to Smocks's argument that the condition providing for reasonable-suspicion searches trumps the other two conditions, the district court made clear that the provisions provide the Probation Office with different tools. The condition authorizing reasonable-suspicion searches allows for searches of "any of Mr. Smocks's devices, even if not reported to the probation office" (A220). Thus, it ensures that the monitoring software is not the only means of conducting a search. The

conditions simply provide alternative ways to monitor Smocks's electronic devices. They are not plainly inconsistent.[7]

Finally, Smocks's claim about his attorney work product fails to show any abuse of discretion in the installation order. *See Legg*, 713 F.3d at 1131-32 (reviewing preserved challenge to conditions of release for abuse of discretion). In challenging the installation condition, the only specific liberty interest Smocks identifies is his work as a legal assistant. Any interest is minimal, however, because it appears that his legal work is akin to a hobby. *See United States v. Paul*, 274 F.3d 155, 171 (5th Cir. 2001) ("As these interests are mere hobbies, the detrimental impact of this [supervised release] restriction appears slight."). At most, his own attorneys have blankly asserted that Smocks helped with his own cases, and purportedly helps other defendants with research or by "sharing his experiences as a defendant" (A95; see also A67, 75, 90). But there is no record evidence that Smocks is trained or experienced as a legal

_____

[7] For the same reasons already discussed, see supra p. 30, any plain error in ordering the installation of monitoring software would satisfy the third prong of plain-error review, but would not "seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings." *Sullivan*, 451 F.3d at 892-93.

assistant. Nor does the record suggest that Smocks is even compensated for this work. In fact, the final presentence investigation report reveals that Smocks has no education, training, or experience in the legal field (SuppA55-57). Further, the Probation Office's petition to modify the conditions of release notes that Smocks "reports self-employment for a biohazard company" (A84). Thus, it does not appear that Smocks reported to the Probation Office his alleged work as a legal assistant, despite being required to do so by his conditions of release (A59).

Smocks relies (at 19) on *United States v. Malenya*, 736 F.3d 554 (D.C. Cir. 2013), but in that case, this Court held that a computer and Internet ban would unreasonably "shrink [the defendant's] employment opportunities to the vanishing point." Here, in contrast, the district court did not ban Smocks from accessing computers or the Internet. Instead, it imposed the less-intrusive condition of computer monitoring. Moreover, unlike in *Malenya*, Smocks's legal work is a hobby—not his profession. *Cf. Russell*, 600 F.3d at 637-38 (deeming unreasonable 30-year computer ban that would prevent the defendant from working as an engineer—"a field in which he has decades of accumulated academic and professional experience"). Given Smocks's minimal liberty interest in working as a

legal assistant, the district court did not abuse its discretion in concluding that any deprivation of Smocks's liberty was "outweighed by the . . . public interest in deterrence and safety" (A219).

## CONCLUSION

WHEREFORE, the government respectfully submits that the Court dismiss Smocks's appeal, or in the alternative, affirm the judgment of the district court.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

CHRISELLEN R. KOLB
ELIZABETH H. DANELLO
Assistant United States Attorneys

_____/s/_____
MARY C. FLEMING
D.C. Bar # 1048019
Assistant United States Attorney
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Mary.Fleming@usdoj.gov
(202) 252-6829

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(g) that this brief contains 7,563 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1), and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

_____/s/_____

MARY C. FLEMING
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing Brief for Appellee to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, A.J. Kramer, Esq., Lisa B. Wright, Esq., and Tony Axam, Jr., Esq., on this 22nd day of November, 2023.

_____/s/_____

MARY C. FLEMING
Assistant United States Attorney